UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

MARIANA LEMIEUX                                                                                   Plaintiff

v.                                                                        Civil Action No. 3:22-cv-151-RGJ

LOUISVILLE METRO GOVERNMENT                                                           Defendant

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Defendant, Louisville Metro Government ("LMG"), moves for summary judgment. [DE 26]. Plaintiff, Mariana Lemieux ("Lemieux"), responded and LMG replied. [DE 29; DE 32]. This matter is ripe for adjudication. For the reasons below, LMG's motion for summary judgment is **GRANTED**. Additionally, the parties' joint motion to vacate and reset the trial date and pretrial deadlines [DE 33] is **GRANTED** in part and **DENIED** in part.

   **I.   Background**

This matter originates from Lemieux's complaint [DE 1] against her former employer, LMG, alleging two counts of disability discrimination—one under the Americans with Disabilities Act ("ADA") and one under the Kentucky Civil Rights Act ("KCRA"). 42 U.S.C. § 12101; KRS 344.040. Lemieux began working for LMG in 2001 as a Senior Social Worker. [DE 29 at 251]. During her employment in 2017, Lemieux was diagnosed with attention deficit hyperactivity disorder – inattentive type ("ADHD"). [*Id.*]. Because of her ADHD diagnosis, Lemieux formally requested accommodations from LMG on three occasions. [*Id.* at 251–53; DE 26-1 at 101]. Lemieux claims that her 2018 demotion and eventual termination in 2021 was discriminatory and that LMG failed to reasonably accommodate her disability. [DE 29 at 253].

Lemieux submitted her first request for accommodations in November 2017. [*Id.* at 260]. This request was ultimately closed by LMG before Lemieux was demoted to Information and Referral Technician. [*Id.* at 252]. The parties dispute whether Lemieux wanted her initial request closed. [*Id.* at 260–61; DE 26-1 at 101]. Lemieux's second request for accommodations came in February 2018 while working in her new role, which LMG granted. [DE 29 at 252]. Approximately two years later, Lemieux was promoted back to her original position as a Senior Social Worker and began falling behind on her work once again. [*Id.*]. Around this time, in June 2020, Lemieux submitted a third request for accommodations to LMG. [*Id.*]. Lemieux requested "support . . . in being more efficient with writing case notes," for her supervisor to "re-write" "a few case notes" as examples for her, to have a timer during the workday, to change her schedule from 9 a.m. to 6 p.m. to 9:30 a.m. to 6:30 p.m., and for her supervisor to help her "work smarter." [*Id.* at 262; DE 26-19 at 207]. The request was mostly denied, and LMG ultimately terminated Lemieux months later after progressing through LMG's disciplinary process. [DE 29 at 252–53].

Throughout the period after her ADHD diagnosis, Lemieux experienced difficulties with several of her supervisors. LMG's case management operating procedures were "in a state of flux" during this time, going through a revision process from 2019 to 2020, [*Id.* at 267; DE 29-3 at 342], and Lemieux's supervisors often failed to communicate clearly. [*Id.* at 258; DE 29-1 at 283]. Lemieux also claims that other social workers on her team failed to complete their case files on time and meet the minimum monthly client contact rate, but that these coworkers were not disciplined. [DE 29 at 267; DE 29-3 at 346].

## II. Discussion

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving

party bears the burden of specifying the basis for its motion and showing the lack of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the nonmoving party must produce specific facts showing a material issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "Factual differences are not considered material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion." *Bell v. City of E. Cleveland*, 125 F.3d 855, 1997 WL 640116, at *4 (6th Cir. 1997) (citing *Liberty Lobby*, 477 U.S. at 252).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *See Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008); *see also Adams v. Metiva*, 31 F.3d 375, 384 (6th Cir. 1994). The Court must view the evidence and draw all reasonable inferences in a light most favorable to the nonmoving party. *See Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). But the nonmoving party must do more than show some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1); *see also Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 131–32 (6th Cir. 2014). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Liberty Lobby*, 477 U.S. at 252.

Rule 56(c)(1) requires that a "party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations

(including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

### A. Failure to Accommodate

"Because the language of the KCRA mirrors that of its federal counterpart, courts interpret the KCRA consistently with federal anti-discrimination law." *Brown v. Humana Ins. Co.*, 942 F. Supp. 2d 723, 730 (W.D. Ky. 2013) (citing *Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 592 (Ky. 2003) and *Brohm v. JH Props., Inc.*, 149 F.3d 517, 520 (6th Cir. 1998)). "Accordingly, the Court will analyze this . . . claim under the framework provided by the [ADA]." *Id.*

"[C]laims premised upon an employer's failure to offer a reasonable accommodation necessarily involve direct evidence (the failure to accommodate) of discrimination." *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007) (citing *Bultemeyer v. Fort Wayne Cmty. Sch.*, 100 F.3d 1281, 1283 (7th Cir.1996)). As a result, the *McDonnell-Douglas* framework does not apply, and "[the Court will] analyze the claim under the following framework:"

> (1) The plaintiff bears the burden of establishing that he or she is disabled. (2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation. (3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.

*Id.* at 869 (quoting *Hedrick v. W. Rsrv. Care Sys.*, 355 F.3d 444, 452 (6th Cir. 2004)). The parties agree that Lemieux is disabled. Accordingly, it is "[Lemieux's] burden to submit evidence sufficient to create a genuine issue of material fact regarding whether [she] is qualified for a position with a proposed reasonable accommodation." *Id.*

"Generally, an ADA plaintiff 'bears the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable.'" *Id.* at 870 (quoting *Hedrick*, 355

F.3d at 457). To determine whether an accommodation is reasonable, "the employer must consider (1) the particular job involved, its purpose, and its essential functions; (2) the employee's limitations and how those limitations can be overcome; (3) the effectiveness an accommodation would have in enabling the individual to perform the job; and (4) the preference of the employee." *Kovac v. Superior Dairy, Inc.*, 998 F. Supp. 2d 609, 620 (N.D. Ohio 2014) (citing *Keever v. City of Middletown*, 145 F.3d 809, 812 (6th Cir.1998)).

A plaintiff fails to show her accommodation request was reasonable if she cannot "prove it was necessary to accommodate her disability." *McDonald v. UAW-GM Ctr. for Hum. Res.*, 738 F. App'x 848, 853 (6th Cir. 2018) (discussing *Obnamia v. Shinseki*, 569 F. App'x 443, 445 (6th Cir. 2014)). Courts often hold that a request for accommodation that is "too vague" is not reasonable. *Id.*; *see also Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 635 (6th Cir. 1998); *Reyes v. Krasdale Foods, Inc.*, 945 F. Supp. 2d 486 (S.D.N.Y. 2013); *Palmer v. Marathon Petroleum Co.*, LP, No. CV 17-68-HRW, 2018 WL 4956110, at *11 (E.D. Ky. Oct. 12, 2018) (holding that requests for "more help" and "additional time" were not reasonable).

Additionally, once a plaintiff requests a reasonable accommodation, it is mandatory for an employer to engage in an interactive process with them. *See Lafata v. Church of Christ Home for Aged*, 325 Fed. Appx. 416, 422 (6th Cir.2009) (quoting *Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 556 (6th Cir. 2008)). "A plaintiff must not only demonstrate the requested accommodation was reasonable but also that any offered alternatives were inadequate." *Palmer*, 2018 WL 4956110, at *11 (citing *Trepka v. Board of Educ.*, 28 Fed. Appx. 455, 459 (6th Cir. 2002)).

### i. First and Second Request for Accommodations

LMG contends that the first accommodation request is not at issue because Lemieux withdrew the request after consulting her doctor, opting to "work on her issues directly with her supervisors." [DE 26-1 at 101]. Although Lemieux asserts in her recitation of facts that "she did not wish to close her ADA reasonable accommodation request," [DE 29 at 260], she appears to abandon any claim related to this first request in her argument section. [*Id.* at 268–76]. Regardless, the Court agrees that there is no genuine dispute of material fact on this issue, and Lemieux's claim fails on this request because she withdrew it. LMG points to ample evidence that Lemieux withdrew her request, instead "inform[ing] human resources that she did not want to ask for any accommodation and would ask her boss to 'work with her one day at a time' and to be clear in writing if there is something that would lead to discipline." [DE 26-1 at 91; DE 26-11 at 178–81]. Lemieux also submitted a note from her doctor after consulting him which stated: "It was our decision together that [Lemieux] would try to resolve some of her issues with the assistance of her support supervisors. Rather than make specific recommendations at this point in time." [DE 26-1 at 91; DE 26-12 at 183]. On these facts, Lemieux withdrew her first accommodations request.

Even if Lemieux had not withdrawn her first request, there is no genuine dispute that it was not a reasonable accommodation request. The first request stated: "I need clear expectations communicated and clear deadlines for any tasks which would bring a consequence of disciplinary action." [DE 26-9 at 173; DE 26-9 at 173]. Lemieux acknowledged that the proposed accommodations of "clear expectations" and "clear deadlines" were unrelated to her disability. [DE 26-1 at 88–90; DE 29-1 at 298]. Even if they were related to her disability, the request remained too vague to reasonably implement even after LMG engaged in the interactive process

with Lemieux to explain how to best support her. [DE 26-1 at 88–99]. Accordingly, Lemieux's claim fails to establish a genuine dispute of material fact as to the first request.

LMG also argues that the second accommodation request is not at issue because it was granted. [DE 26-1 at 101]. Lemieux does not dispute this, arguing only that there is a genuine dispute of material fact on her third accommodation request. [DE 29 at 268–76]. As a result, LMG is entitled to summary judgment as it relates to the second request as well.

### ii. Third Request for Accommodations

Lemieux's third request for accommodations requested (1) support from her supervisor to be "more efficient" writing case notes in the form of her supervisor re-writing a "few case notes" as examples, (2) permission to use a visual timer while conducting business, (3) a change in work schedule to a 9:30 a.m. start time, and (4) feedback from her supervisor to identify ways to "work smarter." [DE 29 at 262; DE 26-19 at 205–09]. Lemieux's doctor supported this schedule change and suggested "supporting [Lemieux] in making a daily schedule." [DE 29 at 262; DE 26-26 at 243]. LMG asserts that the third accommodation request was properly denied because it was "too vague" and would have created an undue hardship on LMG. [DE 26-1 at 102–04]. Lemieux maintains that these accommodations were reasonable requests. [DE 29 at 270–74].

First, Lemieux's request to use a visual timer while conducting business was granted. [DE 26-26 at 241]. Therefore, this could not support a failure to accommodate claim.

Second, Lemieux's request for support to "work smarter" was not reasonable because it was too vague. There is no reading of "work smarter" that is not "simply too vague to reasonably inform [LMG] of a reasonable accommodation." *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 635 (6th Cir. 1998).

7

Third, Lemieux's request to re-write a "few case notes" may seem reasonable on its face. Lemieux argues that the third accommodations request was "at least in part *a specific form of support sought* that [LMG] had not provided to Lemieux – here, rewriting a few case notes as examples for her to follow[.]" [DE 29 at 273 (emphasis in original)]. But given the support Lemieux was already receiving and her response to it, LMG's denial of this request was reasonable. For example, this request was not new because one of Lemieux's supervisors had already emailed an example to Lemieux in 2018, and this did not improve Lemieux's performance. [DE 26-8 at 170]. Lemieux had also worked as a Senior Social Worker since 2001, except for her time in her demoted role, and had ostensibly understood how to effectively perform this essential part of her job when she was meeting expectations. She also already had the opportunity in one-on-one meetings with her supervisor to discuss expectations for her case notes. [DE 26-1 at 94; DE 29-1 at 314]. Indeed, LMG noted in its refusal to grant her accommodations that Lemieux had already received training on inputting case notes, received verbal feedback and examples, and was utilizing LMG's open door policy "almost daily," but still failed to follow the guidance. [DE 26-1 at 96–97; DE 26-26 at 240–44].

Fourth, Lemieux's request to move her schedule back a half an hour was not reasonable because similar previous accommodations granted by LMG did not help Lemieux. [DE 32 at 425; DE 29-1 at 287–88]. LMG stated in its explanation for denying this request that (1) LMG had already moved her start time back to 9:00 a.m. (which had not helped), (2) working after hours conflicted with her request for more support from supervisors, (3) Lemieux already failed to complete her work despite working overtime which was against LMG's policy, and (4) staying after hours presented a safety issue. [DE 26-1 at 96; DE 26-26 at 240–44]. These were all valid

8

reasons for denying the request which are supported by the record, and Lemieux does not provide enough evidence to create a genuine dispute.[1]

Fifth, the creation of a daily schedule was not a reasonable request because Lemieux admitted she did not need support with it and the schedule could change from day-to-day. [DE 32 at 423–24]. Considering the nature of the Senior Social Worker role, creating a daily schedule would amount to passing off Lemieux's essential job duties to another person at LMG. [DE 26-1 at 96 (citing *Russ v. Memphis Light Gas & Water Div.*, 702 Fed. App'x 229 (6th Cir. 2017) for the proposition that "[s]hifting essential duties to another employee is *never* reasonable") (emphasis in original)]. That is because, as Williams testified, schedules in this role are "fluid" and subject to constant revision throughout the day, and it is a Senior Social Worker's "responsibility to manage their schedule." [DE 32 at 423]. Lemieux agreed with this characterization. [*Id.* at 424]. In any case, Lemieux had already implemented a plan for herself which included appointment slots on her calendar for tasks and a reminder to leave enough time for preparation between each one. [DE 26-1 at 95–96; DE 29-1 at 286]. Lemieux agreed that she did not need an accommodation to do this. [DE 32 at 424]. And again, LMG had offered to send Lemieux to another time management training, but Lemieux declined. [DE 26-26 at 243].

"To prevail, [Lemieux] must demonstrate a genuine issue of material fact with regard not only to her entitlement to her requested accommodation, but also to the inadequacy of the offered alternatives." *Trepka v. Bd. of Educ.*, 28 F. App'x 455, 460 (6th Cir. 2002). "The employer need not provide the accommodation that the employee requests or prefers. Instead, the employer retains the 'ultimate discretion' to choose another effective accommodation, even if less expensive

---

[1] While Lemieux does point out that "Williams testified that it would have been an option to start at 9:30am and take a shorter lunch to leave by 6pm" and "this was never offered as an option to Lemieux," this only goes to *some* of the reasons stated by LMG. [DE 29 at 273; DE 29-2 at 329–39; DE 29-3 at 343].

or easier to provide." *Id.* at 459–60 (quoting *Hankins v. The Gap*, 84 F.3d 797, 800–01 (6th Cir.1996)). LMG has provided plentiful evidence that Lemieux was given significant support throughout her employment. By the time of her third accommodation request, most of which was denied, she had either received the same or analogous support to the accommodations that she had requested and showed no improvement, or she had declined the alternative offered by LMG. Lemieux has not created a genuine dispute of fact as to whether she met her "burden of proving that [she] will be capable of performing the essential functions of the job with the proposed accommodation." *Jakubowski v. Christ Hosp. Inc.*, 627 F.3d 195, 202 (6th Cir. 2010) (citation and internal quotation marks omitted).

As a result, there is no genuine dispute of fact that requests made by Lemieux were not reasonable, and there is no need for the Court to evaluate whether they caused an undue burden. Therefore, LMG is entitled to summary judgment on Lemieux's failure to accommodate claims. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

### B. Disparate Treatment

Lemieux asserts in her response that, along with her claims for failure to accommodate, she also stated claims for disparate treatment under the ADA and KCRA. [DE 29 at 276]. Lemieux argues that because LMG did not move for summary judgment on these claims, they must survive LMG's motion. [DE 29 at 276–77]. LMG replies that Lemieux did not clearly plead a disparate treatment claim, and, even if she did, LMG is still entitled to summary judgment on the claim. [DE 32 at 427].

To establish a case for disparate treatment, Lemieux would have to prove: "(1) she is disabled; (2) otherwise qualified for the position; (3) she suffered from an adverse employment decision; (4) the employer knew or had reason to know of her disability; and that (5) similarly situated non-protected employees were treated more favorably." [DE 29, n. 8 (citing *Hopkins v. Elec. Data Sys. Corp.*, 196 F.3d 655, 660 (6th Cir. 1999); *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995))].

The Sixth Circuit has granted summary judgment when a complaint "did not provide fair notice that [plaintiff] was asserting an ADA retaliation claim" when "viewed in light of her subsequent deposition testimony." *Russ v. Memphis Light Gas & Water Div.*, 720 F. App'x 229, 234 (6th Cir. 2017). In such cases when a complaint does not provide fair notice, Courts have ruled that a claim "fails because [the complaint] did not give [the defendant] fair notice that [plaintiff] was making such a claim," and it is "too late" to "expand [the] claim at summary judgment." *Id.* at 235–36; *see also Johnson v. Clafton*, 136 F. Supp. 3d 838, 842 (E.D. Mich. 2015) (explaining that without "fair notice" of allegations to respond to in motion for summary judgment, "[i]t is only fair then that the Court decline to consider them in resolving that motion.") (comparing *Desparois v. Perrysburg Exempted Vill. Sch. Dist.*, 455 Fed. App'x 659, 667 (6th Cir. 2012) ("The bar against asserting new theories at the summary-judgment-response stage is well established.")).

Lemieux's complaint sets forth two causes of action: Count 1 under the ADA and Count 2 under the KCRA. [DE 1 at 4–5]. The facts alleged in the complaint center almost entirely on the accommodations requested by Lemieux and her interactions with LMG in requesting them. [*Id.* at 2–4]. It is true that "[a] failure to accommodate claim is separate and distinct from a discrimination claim, and is analyzed differently under the law." *Konieczka v. Rest Haven Illiana*

*Christian Convalescent Home, Inc.*, No. 2:18 CV 260, 2019 WL 2191256, at *2 (N.D. Ind. May 20, 2019); *see also O'Donnell v. Univ. Hosps. Cleveland Med. Ctr.*, 833 F. App'x 605, 614 (6th Cir. 2020) (distinguishing different standards used for failure to accommodate claims and disparate treatment claims); *Benitez v. Tyson Fresh Meats, Inc.*, No. 3:18-CV-00491, 2022 WL 1283087, at *81 (M.D. Tenn. Apr. 28, 2022) ("To state [a disparate treatment claim] is not to state [a failure to accommodate or failure to engage in the interactive process claim]."). But those claims can be brought under the same count because they are merely different theories of proving a discrimination claim. *See E.F. by Fry v. Napoleon Cmty. Sch.*, No. 12-15507, 2019 WL 4670738, at *10 (E.D. Mich. Sept. 25, 2019) (holding the plaintiff alleged "*both* an intentional discrimination claim and a separate failure-to-accommodate claim") (emphasis in original).

The record suggests LMG was unaware that Lemieux intended to plead disparate treatment claims in addition to failure to accommodate claims until Lemieux's response to LMG's motion. LMG states that Lemieux brought "a single cause of action" for LMG's "[failure] to accommodate her" in its motion for summary judgment, [DE 26-1 at 97], and maintains in its reply that "there was nothing clear about the alleged claim." [DE 32 at 427 (internal quotation marks omitted)]. LMG asserts that even if Lemieux did state a disparate treatment claim, LMG is "nevertheless entitled to summary judgment" here as well. [DE 32 at 427].

But Lemieux's complaint asserts that "[LMG] failed to accommodate [Lemieux's] disability and subjected her to *disparate treatment*, resulting in her termination due to an actual or perceived disability" under her ADA cause of action, and that "[LMG] failed to accommodate Plaintiff's disability and subjected her to *disparate treatment*, resulting in a demotion and later in her termination from employment" under her KCRA cause of action. [DE 1 at 4–5 (emphasis added)]. Immediately preceding Count 1 and Count 2, Lemieux alleges that "other members of

12

[Lemieux's] team who also failed to complete their case files and meet the 80% minimum monthly client contact rate set forth by [LMG] were not disciplined." This is enough to provide LMG fair notice of Lemieux's disparate treatment claim.

On the other hand, Lemieux does not dispute the causes for which she was terminated—failure to meet the client contact rate, submit case reports on time, and complete the Performance Improvement Plan ("PIP")—and does not identify any "similarly situated employee who was treated more favorably than her under similar circumstances." [DE 32 at 428]. And her supervisor's deposition testimony suggests that a similarly situated employee who was also placed on a PIP completed it successfully, which explains why this person was not fired while Lemieux was. [DE 32 at 428; DE 29-3 at 342–43, 345–46]. But the Court cannot rely on only the facts before it to determine whether LMG is "nevertheless entitled to summary judgment," [DE 32 at 427], without providing Lemieux an opportunity to respond. Because this was not raised until late in the briefing process, the Court will allow Lemieux "to provide supplemental briefing on this issue," as Lemieux requests. [DE 29, n. 8]. The Court will also allow LMG a supplemental brief.

### III. Conclusion

For the reasons explained, and the Court being otherwise sufficiently advised, LMG's motion for summary judgment on Lemieux's failure to accommodate claim [DE 26] is **GRANTED**.

Additionally, the parties' joint motion to vacate and reset the trial date and pretrial deadlines [DE 33] is **GRANTED** in part and **DENIED** in part.

Accordingly, **IT IS ORDERED** that:

1. The original trial date of January 16, 2024 at 9:30 a.m. will remain in place.
2. The scheduled pretrial conference date of December 12, 2023, at 1:30 p.m. is **VACATED**.

3.  A pretrial conference is scheduled for **December 19, 2023, at 11:00 a.m.** before the Honorable Rebecca Grady Jennings, Gene Snyder U.S. Courthouse, Louisville, Kentucky.

4.  Lemieux has until **December 7, 2023** to submit supplemental briefing on whether LMG is entitled to summary judgment on Lemieux's disparate treatment claim. LMG has until **December 12, 2023** to submit a supplemental reply.

cc: counsel of record